UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:18 CR 110 |
| ) | |
| RICKY SHULTZ and JILL JUSTICE ) | |

### OPINION and ORDER

Defendant Ricky Shultz has filed a motion to suppress evidence and has requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (DE # 67.) Defendant Jill Justice has moved to join Shultz's motion. (DE # 68.) The motion to join will be granted. The motion for a *Franks* hearing and for suppression of evidence will be denied.

**I.   BACKGROUND**

On September 4, 2018, law enforcement obtained a warrant in the Jasper County Circuit Court to search the defendants' residence and outbuildings for firearms, ammunition, and cell phones.[1] (DE # 67-1.) In support of its application for the warrant, the State presented oral testimony from Richard Trail, a Detective and Sergeant with the Jasper County Sheriff's Department, and a member of the federal task force for the Drug Enforcement Administration. (DE # 67-3 at 2-3.)

Sgt. Trail testified to information provided to law enforcement from a recently-arrested informant. (*Id.* at 5.) The informant confirmed law enforcement's information

---

[1] While the warrant authorized a search of the property where Justice resided with Shultz, the probable cause determination was made with regard to Shultz. (*See generally* DE # 67-3.)

that Shultz had been traveling to Tennessee to pick up large quantities of methamphetamine and was selling it in the DeMontte area. (*Id.* at 7.) Sgt. Trail testified that the informant stated that Shultz regularly trades guns for drugs. (*Id.* at 12.) The informant had personally traded things to Shultz for methamphetamine, and had purchased "large quantities of meth" from Shultz. (*Id.* at 7, 13.) The informant said that he saw Shultz with a pound of methamphetamine two weeks earlier. (*Id.* at 8.) The informant also told officers that they would find a gun safe containing weapons and methamphetamine in the master bedroom of Shultz's house. (*Id.* at 10.) The informant stated that, within the last week, the informant had seen Shultz with two handguns, a "1911 with wood grips" that he carried on his waist and a black handgun that the informant described as a "Glock." (*Id.*)

Sgt. Trail testified that the informant told law enforcement about an incident that had occurred early in the morning four days earlier. (*Id.* at 6, 12.) According to the informant, he drove with a third person to Shultz's home. (*Id.* at 6.) The informant stated that the third person had a black duffle bag with what appeared to be an AR-15 sticking out of the bag. (*Id.*) Sgt. Trail testified that the informant knew what an AR-15 was because the informant was able to describe the weapon and how it functions to law enforcement. (*Id.*) The informant stated that it looked like there was "a lot of stuff in the duffle bag" and that it looked "very heavy[.]" (*Id.*) The third person walked to the back porch of Shultz's residence, and after a short while, returned to the car without the gun. (*Id.*) The informant said it looked like the bag was lighter, as if everything had been

2

taken out of the bag. (*Id.*) Sgt. Trail testified that, early that same morning, there was a burglary reported where an "AR" was stolen, along with AR ammunition, other types of ammunition, a handgun, bulletproof helmets, and a bulletproof vest. (*Id.* at 11.)

Sgt. Trail explained that the informant's information confirmed other information law enforcement had on Shultz. (*Id.* at 7.) The informant accurately described Shultz's house, pole barn, garage, and the address of the property. (*Id.* at 8.) He also accurately told officers that there was a "bunch of junk cars" on the property. (*Id.* at 8.) Sgt. Trail explained that state and federal authorities had been investigating Shultz for approximately two years. (*Id.* at 7.) Sgt. Trail testified that "several people" had informed law enforcement that Shultz has been traveling to Tennessee to pick up large quantities of methamphetamine to sell in the DeMontte area. (*Id.*) Sgt. Trail also testified that "several sources of information" told law enforcement that Shultz trades guns for drugs. (*Id.* at 12.) Sgt. Trail testified that the Bureau of Alcohol, Tobacco, Firearms and Explosives and local authorities had information that Shultz may have a Barrett 50 Cal firearm in his house. (*Id.* at 9.) Law enforcement also knew that Shultz had a prior felony conviction for Battery Causing Bodily Injury, and therefore was not permitted to be in possession of any firearm. (*Id.*)

Sgt. Trail provided the court with information regarding the informant's credibility, though this information was incomplete. Sgt. Trail testified that the informant had previously worked with the Newton County Drug Task Force "a lot" and the Newton County drug task force "had success while working him [sic]." (*Id.* at

3

7.) However, Sgt. Trail did not provide details regarding the informant's past work with law enforcement. Sgt. Trail also testified that the informant had been arrested three days earlier for resisting law enforcement and possession of methamphetamine. (*Id.* at 5.) However, Sgt. Trail did not inform the court that the informant had also been arrested on charges of possession of paraphernalia, possession of a hypodermic syringe, and making a false identity statement. (DE # 67-4.) Sgt. Trail also did not tell the court that the informant had prior convictions for misdemeanor possession of a controlled substance, felony possession of a controlled substance within 1,000 feet of a public park, and misdemeanor possession of a synthetic drug or synthetic drug lookalike. (DE # 67-5.) However, during the hearing, Sgt. Trail did agree that the informant "isn't a good citizen" and agreed that the informant provided the information to "help himself out from being arrested." (DE # 67-3 at 5.) Finally, Sgt. Trail stated that the informant made statements against his interest when he admitted to trading things to Shultz for methamphetamine, and made statements about buying large quantities of methamphetamine from Shultz. (*Id.* at 7.)

The court found probable cause on the basis of Sgt. Trail's testimony. (*Id.* at 13.) The court issued a warrant to search Shultz's house, gun safe, garage, pole barn, and curtilage, for firearms, ammunition, and cell phones. (DE # 67-1.)

Law enforcement executed the search the following day, on September 5, 2018. (DE # 67-7 at 1.) During the search, officers found a gun safe in the master bedroom. (*Id.*) In the gun safe, officers found 29 firearms, several unlabeled pill bottles, various

amounts of prescription medication, and a baggie containing a white substance that field-tested positive for methamphetamine. (*Id.*)

After the substance field-tested positive for methamphetamine, Detective Mark Ceglarek applied for a second search warrant for narcotics and paraphernalia. (*Id.*) Detective Ceglarek's probable cause affidavit described what officers had discovered in the gun safe. (DE # 67-6.) He stated that when the safe was opened, "I immediately observed a baggie containing a crystal substance of what appeared to be, based upon my training and experience, crystal methamphetamine located in plain view on a shelf inside near the top of the safe." (*Id.* at 1.) However, photographs of the gun safe and Sgt. Trail's police report cast some doubt on whether the baggie was in plain view. (*See* DE # 67-7; DE # 67-8.)

Detective Ceglarek's affidavit stated that the substance discovered in the baggie field-tested positive for methamphetamine. (*Id.*) He stated that he observed numerous baggies of pills and pill containers, which had not yet been identified. (*Id.*) Detective Ceglarek also explained that he found scales on the master bedroom nightstand and inside the gun safe. (*Id.*) He explained that officers advised Shultz of his *Miranda* rights, and Shultz said that there were other drugs located in the house and unattached garage. (*Id.*) He further explained that, during their search for firearms, the officers discovered a jar containing what appeared to be marijuana and marijuana seeds, another baggie containing a crystal substance that appeared to be crystal methamphetamine, and four bundles of currency inside a black bag. (*Id.*) The Jasper County Superior Court issued a

5

second search warrant the same day, on September 5, 2018, authorizing the search for controlled substances and paraphernalia. (DE # 67-2.) At the conclusion of the search, officers had seized (among other things) 48 firearms and 269 grams of suspected methamphetamine. (*Id.* at 2-3.)

Shultz was indicted in the instant case for possessing with intent to distribute methamphetamine (Count 1), conspiring to do the same (Count 2), possessing a firearm as a prohibited person (Count 3), possessing unregistered machine guns (Counts 4 and 5), and possessing a firearm in furtherance of a drug trafficking crime (Count 6). (DE # 12.) Justice was also indicted on the above charges, with the exception of Count 3. (*Id.*)

Defendants now move to suppress the evidence obtained as a result of the September 4th and 5th warrants and request a *Franks* hearing to challenge the warrants.

## II.     LEGAL STANDARD

A criminal defendant is only entitled to a *Franks* evidentiary hearing to examine the sufficiency of a search warrant if the defendant makes a "'substantial preliminary showing' that the warrant application contained a materially false statement made by law enforcement with deliberate or reckless disregard for the truth and that the false statement was necessary for the finding of probable cause." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 155-56). The holding of *Franks* applies to omissions, in addition to affirmative misrepresentations. *United States v. Mullins*, 803 F.3d 858, 862 (7th Cir. 2015).

6

Here, defendants have made a substantial preliminary showing that Sgt. Trail deliberately or recklessly omitted information while applying for the September 4th warrant. *See United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (for purposes of obtaining a *Franks* hearing, "credibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide sufficient circumstantial evidence to support a reasonable and thus permissible inference of reckless disregard for the truth."). Additionally, the photographs of the gun safe and the statements in Sgt. Trail's police report are sufficient to support a preliminary inference that Detective Ceglarek deliberately or recklessly submitted false information while applying for the September 5th warrant. Therefore, defendants' entitlement to a *Franks* hearing turns on the question of whether defendants have made a substantial preliminary showing that the false or omitted information in the September 4th and 5th warrants were necessary for the finding of probable cause.

"Probable cause exists when the circumstances indicate a reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary." *United States v. Adams*, 934 F.3d 720, 725 (7th Cir. 2019), cert. denied, No. 19-6748, 2020 WL 129892 (U.S. Jan. 13, 2020) (internal citation and quotation marks omitted).

In reviewing the information supporting the probable cause determination, the court should eliminate any false statements, and incorporate any omitted facts, to determine whether probable cause existed. *Mullins*, 803 F.3d at 862. "If sufficient

7

allegations existed warranting the search irrespective of the affiant's alleged errors, a [*Franks*] hearing is unnecessary and the motion should be denied." *Id.* "In cases where a warrant has issued, as here, we give great deference to the issuing judge's decision that the facts add up to 'probable cause.'" *United States v. Hansmeier*, 867 F.3d 807, 811 (7th Cir. 2017) (internal citation and quotation marks omitted).

When an informant's information serves as the basis for the probable cause determination, the probable cause determination turns on the informant's credibility. *Id.* "To evaluate an informant's credibility, [courts] consider 'the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate.'" *Id.* (quoting *Glover*, 755 F.3d at 816). "[N]o one factor is determinative in weighing an informant's credibility. A weakness in one may be offset by the strength of others." *Id.* at 812. Probable cause based off of an informant's tip must be assessed in light of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Clark*, 935 F.3d 558, 564 (7th Cir. 2019).

## III.   DISCUSSION

### A.   September 4th Warrant

Defendants present two challenges to the September 4th warrant, both pertaining to the issuing judge's ability to assess the reliability of the informant. First, defendants argue that Sgt. Trail failed to provide adequate details regarding the informant's prior informing. (DE # 67 at 3.) Second, defendants argue that Sgt. Trail

8

omitted credibility information regarding the informant's prior convictions and other bases for the informant's arrest (which included making a false identity statement).

### 1.     Credibility Factors

This court must determine whether defendants have made a substantial preliminary showing that these omissions were necessary to a finding of probable cause. *See Williams*, 718 F.3d 649. The issuing judge's probable cause determination was based on Sgt. Trail's testimony, which in turn, was based on information supplied by the informant. Thus, the probable cause determination turned on the informant's credibility. *Hansmeier*, 867 F.3d 811. Here, considering the totality of the circumstances, defendants have failed to meet their burden.

The informant provided detailed, firsthand information. *See United States v. Lowe*, 389 F. App'x 561, 563 (7th Cir. 2010) ("[T]he more details an informant provides-even an informant of unknown reliability-the greater the issuing judge's confidence in the informant's reliability."). The informant gave law enforcement information about the specific types of firearms in Shultz's possession (a black "Glock" and a "1911 with wood grips"); he told law enforcement specifically where Shultz kept the guns and methamphetamine (a gun safe in the master bedroom); the informant stated that Shultz regularly trades guns and other things for methamphetamine; the informant stated that he has personally purchased large quantities of methamphetamine from Shultz; the informant had specific information regarding the quantity of methamphetamine in

9

Shultz's possession (a pound); and the informant knew that Shultz sources his methamphetamine from Tennessee.

The information the informant provided was recent. The informant saw Shultz with a pound of methamphetamine two weeks earlier, saw Shultz with two firearms a week earlier, and provided a detailed account of a third party apparently dropping off an AR-style firearm and the contents of a black duffle bag at Shultz's house four days before the probable cause hearing.

Law enforcement was also able to corroborate some of the information the informant provided. Shultz had been under investigation for two years at the time the informant provided his information. Sgt. Trail testified that other sources provided information that Shultz travels to Tennessee to pick up methamphetamine to sell in the DeMontte area, and that Shultz trades guns for drugs. Law enforcement also had prior information that Shultz was in possession of a firearm, specifically a Barrett 50 Cal. While Sgt. Trail did not provide any details regarding the credibility of these other sources, this information is nevertheless entitled to some corroborative weight. *See United States v. Olson*, 408 F.3d 366, 371-72 (7th Cir. 2005) (weight of information from unnamed, additional sources was "slight" but "still retain[ed] some corroborative value"). Law enforcement was also able to corroborate the informant's statements regarding the location of Shultz's home, the description of the property, and the "junk cars" located on the property. While this does not corroborate that Shultz was engaged

10

in unlawful activity, it is entitled to some weight in assessing the informant's credibility. *See Hansmeier*, 867 F.3d at 811.

Additionally, there was some corroboration of the informant's information regarding the third party who apparently dropped off the AR-15 style firearm and the contents of the black duffle bag at Shultz's house. A burglary was reported to have occurred the very same morning, and an AR-style firearm was reported as stolen.

The informant also made statements against his penal interest. A newly-arrested informant "merits a greater dose of skeptisism when assessing his credibility." *Olson*, 408 F.3d at 370. However, statements made against an informant's interest carry a presumption of reliability. *Id.* at 371 (informant's admissions exposed him as more culpable than originally suspected); *United States v. Cruz-Rea*, 626 F.3d 929, 939 (7th Cir. 2010) ("[W]e consider the informant's admission of culpability as an indication of veracity"). A motive to curry favor does not necessarily render an informant unreliable, because informants attempting to strike a bargain with the police have a strong incentive to provide accurate information. *Olsen*, 408 F.3d at 371. Here, the informant's statement that he has previously purchased large quantities of methamphetamine from Shultz was an inculpatory statement beyond the scope of his arrest and adds to the credibility of his information.

The only factor that does not weigh in favor of the informant's credibility is the fact that the informant did not testify before the issuing judge. However, considering the strength of the other factors, the fact that the informant did not personally appear

11

before the judge is not sufficient to doom the probable cause finding. *See Hansmeier*, 867 F.3d at 812 ("The only factor that doesn't favor [the informant's] credibility is that he didn't appear before the issuing judge. But that is the absence of just one of many factors used to evaluate an informant's credibility; the others all tend to favor [the informant].").

### 2. Informant's Past Informing

Defendants argue that Sgt. Trail should have provided more information regarding the informant's past informing. Defendants are correct that Sgt. Trail's statements that the informant had previously worked with the Newton County Drug Task Force "a lot" and that they have had "success while working [with] him," is not as detailed as it should have been. *Compare United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) (statement that an informant "is believed to be a reliable source" without any supporting factual information must be treated as information obtained from an informant of unknown reliability) *with United States v. Butler*, 283 F. App'x 393, 396 (7th Cir. 2008) (distinguishing *Koerth* where probable cause affidavit stated informant has "proven himself credible" by providing information that was validated by law enforcement and lead to the conclusion of active investigations). Here, the level of detail provided by Sgt. Trail falls somewhere between that provided in *Koerth* and *Butler*.

However, even the wholesale omission of relevant, damaging information regarding an informant's credibility may be overcome if the other credibility factors are strong. *Compare United States v. Bradford*, 905 F.3d 497 (7th Cir. 2018) (warrant

12

application that omitted all credibility information regarding informant nevertheless supporting finding of probable cause where informant's information was "fresh, firsthand, quite detailed, and corroborated") *with Glover*, 755 F.3d at 817 (*Franks* hearing required where there was a "complete omission of known, highly relevant, and damaging information about [informant's] credibility—his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of payment," and no strong showing for other credibility factors). In this case, the other indicia of credibility were strong. Therefore, the probable cause determination survives, despite the absence of adequate detail regarding the informant's prior informing.

### 3. Damaging Credibility Information

The court must also consider whether defendants have made a substantial preliminary showing that, had Sgt. Trail disclosed the damaging credibility information about the informant, the issuing court's probable cause finding would have been different. *Mullins*, 803 F.3d at 862. Defendants argue that Sgt. Trail improperly omitted the fact that the informant had three previous convictions for possession of controlled substances, two of which were misdemeanor convictions. Defendants also argue that Sgt. Trail should have disclosed the additional bases for the informant's arrest – possession of paraphernalia, possession of a hypodermic syringe, and making a false identity statement.

13

These omissions were not material to the probable cause determination. The issuing court was provided with damaging credibility information that was similar to the information that was omitted. Specifically, the court was provided with information that the informant had been in possession of methamphetamine and had attempted to evade law enforcement. Sgt. Trail agreed that the informant "isn't a good citizen" and only provided information to "help himself out[.]" Thus, the court had sufficient information to assess the informant's credibility and potential motives for informing. In light of the totality of the circumstances, defendants have not made a substantial preliminary showing that including this omitted information would have altered the court's probable cause determination.

    4.  <u>Similar Cases</u>

The Seventh Circuit has upheld probable cause determinations in cases similar to the one before this court. In *United States v. Hansmeier*, the probable cause affidavit was based on information provided by an informant who had recently been arrested for selling methamphetamine. 867 F.3d 807, 809 (7th Cir. 2017). The night of the informant's arrest, the informant told law enforcement: the defendant was his source for the drugs; he knew the prices the defendant charged; the defendant lived in Missouri; the defendant dealt large quantities of methamphetamine, heroin, and marijuana; the informant had been to the defendant's home 18 times in the previous six months; the informant purchased methamphetamine from the defendant a few days earlier; the defendant kept a supply of methamphetamine in his house; the defendant had a large

14

stack of drug money at his house the last time the informant was there; and the defendant recently received a large shipment of methamphetamine. *Id.* at 810. The informant successfully directed law enforcement to the defendant's house. *Id.* Law enforcement ran a background check on the defendant, and learned that the defendant had a prior conviction for a drug-distribution-related offense. *Id.* The officer who submitted the affidavit also noted that he was familiar with the defendant from previous investigations and that another confidential informant had told him about the defendant's drug-dealing scheme. *Id.* The defendant moved to suppress the evidence discovered during the search on the basis that the probable cause affidavit relied on an untested, newly arrested, confidential informant's uncorroborated statements. *Id.*

      The Seventh Circuit affirmed the district court's denial of the defendant's motion. First, the Court found that the officer corroborated part of the informant's story by verifying that the informant correctly identified where the defendant lived. *Id.* at 811. While this did not verify the informant's claim that the defendant was selling drugs, "it is important in gauging [the informant's] overall credibility as an informant." *Id.* The Court held that the officer also corroborated the informant's story in other ways: law enforcement was familiar with the defendant from previous investigations; a background check revealed the defendant's prior drug conviction; and a second, unnamed, confidential informant told law enforcement of the defendant's drug dealing, which "counts as 'slight' corroboration." *Id.* at 812.

15

The Court found that although the warrant could not survive on corroboration alone, other factors also weighed in favor of finding probable cause. *Id.* The informant's information was detailed, recent, and was based on first-hand knowledge. *Id.* Moreover, the informant's statements were unimmunized and were against his penal interest. *Id.* "[A]lthough [the informant] was a newly arrested informant, which subjects him to greater scrutiny, the issuing judge was entitled to conclude that [the informant's] recent arrest gave him an incentive to supply the police with accurate information in hopes of receiving lenient punishment for his own crimes." *Id.* (internal citation omitted). Finally, "the issuing judge was aware that the officers knew who [the informant] was (that is, he was a confidential informant as opposed to an anonymous tipster), meaning that the officers could find him and hold him responsible if he gave misleading information—yet another check on credibility." *Id.* The Seventh Circuit found that the only factor that did not favor the informant's credibility was that he did not appear before the issuing judge. The Court concluded, "substantial evidence in the record supports the issuing judge's probable-cause determination." *Id.*

Another instructive case is *United States v. Lake*, 500 F.3d 629 (7th Cir. 2007). There, an informant told law enforcement that the defendant sold crack cocaine out of his apartment; the informant had purchased crack from the defendant the previous evening; the informant had known the defendant for ten years; and the informant knew that defendant kept drugs and a black pistol in a particular dresser drawer in his bedroom. *Id.* at 631. The informant drew a diagram of the apartment, and highlighted

16

where the defendant kept the contraband. *Id.* Law enforcement drove past the defendant's apartment and confirmed that the exterior matched the informant's description. *Id.*

The Seventh Circuit held that there was probable cause to support the warrant to search the defendant's apartment. *Id.* at 632. The Court held that the level of detail provided by the informant supports the probable cause finding. *Id.* at 633. The Court noted that the officers also corroborated at least some of the information the informant gave them by driving past the defendant's apartment. *Id.* Furthermore, the informant's admission that he had purchased the drugs is "a statement against his penal interest and thus a weighty factor in establishing probable cause even if the statements have not been proven reliable." *Id.* Although the informant was previously unknown to the police, the informant had purchased the drugs the night before he spoke to police; "given the recency of the purchase, it was reasonable for the police to rely on his statements." *Id.* The informant also personally testified before the magistrate judge, providing an additional indicia of reliability. *Id.*

Finally, in *United States v. Searcy*, the Seventh Circuit held that an informant's information that the defendant was in possession of a gun was sufficiently reliable to support a finding of probable cause. 664 F.3d 1119 (7th Cir. 2011). The informant's information was first-hand. *Id.* at 1122. The informant's information was recent, having been obtained three days before the application for the search warrant. *Id.* The information was adequately corroborated by law enforcement where the police

17

confirmed that the informant correctly identified the defendant's address, that defendant lived with other members of his family, and where the informant stated that the defendant's home had recently been shot at by a rival gang member and law enforcement understood the defendant to be a member of a gang that is often involved in weapons-related incidents. *Id.* at 1122-23. The Seventh Circuit acknowledged that the affidavit lacked specificity, but the lack of detail was not sufficient to overturn a finding of probable cause in light of all of the circumstances, including the fact that the informant had recently provided information that led to three arrests. *Id.* at 1123.

This case is ultimately very similar to *Hansmeier*, *Lake*, and Searcy. As in those cases, here Sgt. Trail applied for a warrant based on informant information that was detailed, recent, and first-hand. While defendants argue that Sgt. Trail failed to provide adequate information regarding the informant's prior informing, that is not dispositive. In *Lake* and *Hansmeier*, there was a similar degree of factual information provided by an untested informant and the circumstances were nevertheless sufficient to support a finding of probable cause. Here, each individual detail Sgt. Trail provided "may not have been sufficient to establish probable cause by itself, but the details were mutually reinforcing." *Adams*, 934 F.3d at 726. *See also Olson*, 408 F.3d at 372 ("[W]hile the weight of each item when assessed separately may be slight, together they suffice to corroborate [the informant's] story; and, when viewed under the 'totality-of-the-circumstances' standard, altogether provide enough to establish probable cause." (internal citation omitted)). Considering the totality of the

circumstances, the judge that issued the September 4th warrant had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238.

    B.    *September 5th Warrant*

Defendants also argue that the September 5th warrant should be suppressed. Defendants argue that Detective Ceglarek's probable cause affidavit contains a false statement; namely, that a baggie containing methamphetamine was in plain view when the officers opened the gun safe. Like the omissions in the September 4th warrant application, here too defendants have failed to make a substantial preliminary showing that this allegedly false statement was necessary for the finding of probable cause. *See Franks*, 438 U.S. at 171-72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

Here, omitting the statement that a baggie containing methamphetamine was in plain view when the officers opened the gun safe, there was still sufficient content in Detective Ceglarek's affidavit to support a finding of probable cause. Detective Ceglarek stated that Shultz admitted, after receiving his *Miranda* rights, that there were drugs located in his house and unattached garage. (DE # 67-6.) Additionally, during their search for firearms, officers discovered: numerous pill containers containing unknown substances in the gun safe; scales on the master bedroom nightstand and inside the gun safe; and inside a crawl space, a jar containing what appeared to be marijuana and marijuana seeds, a baggie containing a crystal substance that appeared to

19

be crystal methamphetamine, and four bundles of U.S. currency. (*Id.*) Furthermore, officers conducted a canine sniff of the vehicles parked on the front of the property and were alerted to the presence of a narcotic odor emanating from two of the vehicles. (*Id.*) This evidence provided a sufficient basis for a finding of probable cause for the September 5th warrant. *See Mullins*, 803 F.3d at 862 (defendant was not entitled to a *Franks* hearing where officer's false statements and mischaracterizations in the warrant affidavit were not material to the probable cause determination).

In conclusion, the defendants have failed to make a substantial preliminary showing that Sgt. Trail or Detective Ceglarek omitted information, or included false information, that was material to the issuing judge's finding of probable cause for the September 4th and 5th warrants. Accordingly, defendants are not entitled to a *Franks* hearing, and are not entitled to suppression of evidence collected pursuant to those warrants.

## IV.    CONCLUSION

The court **GRANTS** defendant Jill Justice's motion to join. (DE # 68.) The court **DENIES** defendants Ricky Shultz and Jill Justice's motion to suppress. (DE # 67.)

**SO ORDERED.**

Date: February 27, 2020

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT