UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 2:18-CR-110

RICKY SHULTZ

## OPINION AND ORDER

In September 2018, law enforcement executed a search warrant at the home of Defendant Ricky Shultz and his partner, Jill Justice. The officers found 48 guns: 34 long guns, two of which were fully automatic, and 14 handguns. The officers also found 226 grams of methamphetamine, along with a digital scale and packaging material. Upon questioning, Mr. Shultz admitted to possessing the methamphetamine and selling it over 50 times in the last six months. He also admitted that some of the guns were his.[1]

Eventually, Mr. Shultz pleaded guilty to possessing with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3). On March 22, 2022, the Court sentenced Mr. Shultz to 180 months of imprisonment on Count 1 and 120 months of imprisonment on Count 3, to be served concurrently, for a total of 180 months. (DE 149.)

With five years left on his sentence, Mr. Shultz moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Because Mr. Shultz has failed to demonstrate extraordinary and compelling reasons for early release or a reduction of sentence, the Court will deny the motion.

---

[1] In a jail call a week after his arrest, Mr. Shultz urged Ms. Justice to claim that all the guns belonged to her, to which she agreed.

### A. Standard of Review

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, as relevant here, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the BOP. 18 U.S.C. § 3582(c)(1)(A).

The compassionate release analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what, if any, reduction to award the defendant. *Id.* The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Curren*, 2023 U.S. Dist. LEXIS 90170, *5 (S.D. Ill. May 23, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).

The policy statements to the Sentencing Guidelines offer circumstances, or their combination, for the existence of extraordinary and compelling reasons. These considerations include medical circumstances of the defendant, as well as occurrences of an outbreak of an infectious disease at the prison where the defendant is housed; advanced age of the defendant who has served a significant period of his sentence; family circumstances of the defendant, such as the death or incapacitation of the caregiver of the defendant's minor children, incapacitation of the defendant's spouse or parent, where the defendant would be the only available caregiver;

2

or the defendant was a victim of sexual or physical abuse while in custody. U.S.S.G. § 1B1.13(b)(2)–(4).

The examples also include "other reasons," that is, where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons" just listed, are similar in gravity to those circumstances. § 1B1.13(b)(5).

Finally, subsection (b)(6) provides that an unusually long sentence may be considered an extraordinary and compelling reason for an early release.

The defendant's rehabilitation is not, by itself, an extraordinary and compelling reason but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." § 1B1.13(d).

### B. Discussion

### (1) *Request for Appointment of Counsel*

In his motion for compassionate release, Mr. Shultz requests appointment of counsel to assist him with the motion. An inmate seeking relief under § 3582 has no constitutional or statutory right to counsel. *United States v. Blake*, 986 F.3d 756 (7th Cir. 2021). As such, Mr. Shultz is not entitled to appointed counsel. *Blake* nonetheless indicates that a court may recruit pro bono counsel for an inmate seeking § 3582 relief. *Id*. That said, the Court finds there has been no showing in this case that such a step is merited.

Before deciding whether to appoint pro bono counsel, "the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the

plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).

Here, apart from stating that he is requesting an appointment of counsel, Mr. Shultz has provided nothing to suggest that he tried to secure counsel on his own. This is a threshold requirement, without which no further inquiry is necessary.[2] *See id.* ("[The first step] is a mandatory, threshold inquiry that must be determined before moving to the second inquiry.") Accordingly, Mr. Shultz has not established that pro bono counsel is necessary, and his request must be denied. In any case, Mr. Shultz's claims are not complicated, and he has adequately articulated his arguments, leading the Court to conclude that the interests of justice do not support the discretionary appointment of counsel. That's particularly true given that Mr. Shultz's claims lack merit. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (noting that, as stewards of the limited resource of volunteer lawyers, the courts should consider the perceived merits of an indigent plaintiff's claims, when deciding whether to appoint counsel).

**(2)** *Mr. Shultz's Motion for Compassionate Release*

In his form motion for compassionate release, Mr. Shultz checked a box stating that the caregiver of his disabled son has died or become incapacitated and he is the only available caregiver for his child. (DE 161 at 6.) He further checked a box indicating that his spouse or

---

[2] Mr. Shultz did submit a copy of what looks like a screening questionnaire from Lawyers Paralegal Services, LLC, in Plano, Texas, but it's unclear whether he ever sent the questionnaire. Even so, a single attempt to contact a legal organization for assistance in prosecuting one's motion is generally insufficient for demonstrating a reasonable attempt to obtain counsel. *See* Moore v. FWCS S. Transp., No. 1:17-CV-266 TLS, 2018 WL 3599282, at *1 (N.D. Ind. July 27, 2018) ("Contacting just one attorney, however, is not a reasonable attempt to obtain counsel. This Court has previously required that a pro se plaintiff contact at least three attorneys concerning the case." (citing *Pollard v. Meadows*, No. 1:15-cv-00330-RLM, 2016 WL 128531, at *1 (N.D. Ind. Jan. 11, 2016)); *see also Medlin v. Ormandy*, No. 3:12-CV-669, 2013 WL 12642149, at *1 (S.D. Ill. Mar. 26, 2013) ("Contacting two organizations is an insufficient attempt to secure legal counsel: Plaintiff should have instead contacted lawyers or law firms.").

registered partner has become incapacitated and he is the only caregiver for his spouse or registered partner. (*Id*.) He also provided additional information about his son and noted his own medical issues: "Have a son with spina bifida whose caregiver is no longer available to him. He has a lot of medical issues that need to be taken care of that he can't do for himself. I have also a few medical issues COPD – Asthma." (*Id*. at 161.) In his reply brief, Mr. Shultz added that, last year, his son suffered a medical complication requiring an amputation of his leg.[3] (DE 167 at 6–7.)

In a brief attached with the motion, Mr. Shultz states that being imprisoned has changed him so he is no longer the same man he was at sentencing. He asks the Court to conduct a video hearing so the Court can see for itself the change he has undergone. (DE 162 at 2.) He also argues that, in November 2025, the United States Sentencing Commission lowered the guidelines for methamphetamine and felon in possession offenses so that his 180-month sentence is now deemed excessive. (*Id*. at 3.)

The Government objects to Mr. Shultz's motion. The Government argues that Mr. Shultz's stated reasons for relief are neither extraordinary nor compelling. According to the Government, although Mr. Shultz's partner, Jill Justice, was detained for violating the terms of her supervised release in case number 2:21-CR-21, she was recently sentenced to time served and is no longer incarcerated. The Government also submits that Mr. Shultz was sentenced under the career offender guidelines, which remain unchanged under the current sentencing guidelines. Finally, the Government contends that the § 3553(a) factors weigh against Mr. Shultz's early release. The government does not dispute that Mr. Shultz exhausted his administrative remedies by seeking release with the warden before filing his motion in the district court.

---

[3] According to the PSR, Mr. Shultz's son is 26 years old and is paralyzed. (PSR, DE 142 ¶ 67.)

In his reply brief, Mr. Shultz adds two new grounds for relief: he argues that a reduction in sentence is warranted due to the harsh imprisonment conditions during the Covid-19 pandemic, and that a sentencing disparity exists between his sentence and Ms. Justice's.

With his reply brief, Mr. Shultz submitted letters from his mother, daughter, and the daughter's fiancé, each of whom states that Mr. Shultz has changed significantly since his sentencing and that his presence at home would support his disabled son and aging mother, as well as the rest of the family.

### (3) Mr. Shultz has Failed to Show that He is Entitled to Compassionate Release

#### (a) § 1B1.13(b)(3): Incapacitation of the Child's Caregiver or Spouse

The defendant's family circumstances can constitute extraordinary and compelling reasons in cases involving "[t]he death or incapacitation of the caregiver of . . . the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A). Mr. Shultz states that his disabled son's caregiver has become incapacitated[4] but submits no other information, nor any medical records to support his claim concerning the caregiver. In fact, he does not even identify the caregiver. While it is well established that Mr. Shultz's son is disabled and incapable of self-care, the Court has been provided with no information about the purported sole caregiver. As a result, Mr. Shultz has failed to establish extraordinary and compelling reasons under § 1B1.13(b)(3)(A).

---

[4] In the argument section of his motion, Mr. Shultz states that the caregiver was taken from his son "for legal issues." (Def.'s Br, DE 162 at 7.)

Further, assuming his son's caregiver is Ms. Justice, she was sentenced in February 2026 to time served, and the Court is unaware of any impediment to her ability to provide care.[5] More importantly, though, detention is not incapacitation, so even if Ms. Justice were detained again, that would not amount to an extraordinary and compelling reason. This is evident from the two other conditions that follow the "incapacitation of the caregiver" clause:

> (B) The *incapacitation* of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (C) The *incapacitation* of the defendant's parent when the defendant would be the only available caregiver for the parent.

§ 1B1.13(b)()3)(B)-(C) (emphasis added). In each of these clauses, by virtue of the reference to "the only available caregiver," the ordinary meaning of "incapacitation" (physical or mental inability of normal functioning) is apparent. This suggests that an incapacitated caregiver is likewise a person who no longer is capable of normal functioning, not merely a person who has been removed from the caregiving responsibility. "[W]hen words 'are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar.'" *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 786 (7th Cir. 2017) (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 195 (2012)); *see also United States v. Reedy*, No. 18-CR-87, 2024 WL 5247954, at *11 (N.D. Ill. Dec. 30, 2024) ("While the relevant policy statement, § 1B1.13(b)(3)(B), does not define 'incapacitated,' the term's plain meaning—'made incapable of or unfit for normal functioning—and the statutory context, especially the associated need for a 'caregiver,' make clear that 'incapacitated' implies that the person is incapable of caring for

---

[5] In his reply brief, Mr. Shultz does not respond to the Government's observation that Ms. Justice is no longer detained.

themself." (citing Merriam-Webster Dictionary)); *United States v. Gross*, No. 1:17-CR-37-HAB, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024) ("'Incapacitation' within the meaning of § 1B1.13(b)(3) typically means that the individual is 'completely disabled' and 'cannot carry on any self-care' or 'is totally confined to a bed or chair.' Proving incapacity is a high bar." (quoting *United States v. Steele*, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024)). Finally, even assuming Ms. Justice has become incapacitated, Mr. Shultz has not shown that she was the sole available caregiver, such that he is the only remaining person able to care for his son.

Mr. Shultz also checked the box that his spouse or registered partner has become incapacitated, and he is the only caregiver for his spouse or registered partner (DE 161 at 6), thus invoking § 1B1.13(b)(3)(B). But as with his son's caregiver, Mr. Shultz failed to supply the necessary medical information to back up his claim. Nor does it appear that Ms. Justice is Mr. Shultz's spouse, and he has provided no information showing that she is his registered partner. Accordingly, no relief is available to Mr. Shultz under § 1B1.13(b)(3)(B).

The Court is sympathetic to Mr. Shultz's request, but, without more, his desire to care for his son is not an extraordinary and compelling reason for release. *See United States v. Johnson*, No. 3:23-CR-30016-NJR-2, 2026 WL 380567, at *3 (S.D. Ill. Feb. 11, 2026) (citing *United States v. Gonzalez*, No. 11- 26, 2025 WL 2984715, at *4 (N.D. Ind. Oct. 22, 2025) (recognizing that "most prisoners' families suffer hardships due to the prisoners' incarceration").

(b) *§ 1B1.13(b)(1): Mr. Shultz's Medical Circumstances*

In the form requesting compassionate release, Mr. Shultz wrote that he has COPD and asthma. Although he also submitted an accompanying brief and then a reply brief, he does not discuss these conditions nor describe what effect they have on his day-to-day activities. Nor has

Mr. Shultz submitted any medical evidence backing up his allegations. Without such evidence, Mr. Shultz cannot establish that his medical circumstances constitute extraordinary and compelling circumstances. *See United States v. Scott*, 850 F. App'x 449, 451 (7th Cir. 2021) ("First, it was [the defendant] who bore the burden of proving extraordinary and compelling reasons for release, but he failed to meet his burden by not furnishing any medical records about the severity of his health conditions or any materials showing that the conditions increased his risk of serious COVID-19 illness." (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)). What's more, Mr. Shultz's individualized needs plan suggests that he has no medical restrictions and is cleared for regular duty. (*See* DE 161–4.) Given the lack of evidence, the Court cannot conclude that his COPD and asthma provide sufficient basis for his early release.

### (c) *Change in the Sentencing Guidelines*

Mr. Shultz further claims that extraordinary and compelling reasons exist for his release due to a change in the sentencing guidelines that would affect his punishment if he were sentenced today. In particular, he states that the amendments to the November 2025 Guidelines reduced the advisory guidelines sentences for distributing methamphetamine and possessing a firearm as a felon.

There are two problems with Mr. Shultz's argument. First, Mr. Shultz ignores the fact that, because of his career offender status, the applicable Guidelines provision was § 4B1.1(b)(2) (2018), and it remains unchanged in the 2025 Guidelines Manual. Second, even if the applicable guideline had changed, § 1B1.13(c) provides that, except for § 1B1.13(b)(6), non-retroactive changes in law, including non-retroactive Guideline amendments, cannot establish extraordinary and compelling reasons but may be considered in determining the extent of a reduction if such

9

reasons are otherwise shown. Therefore, without presenting an independent basis for extraordinary and compelling reasons, Mr. Shultz may not rely on any nonretroactive change to the Guidelines. And insofar as § 1B1.13(b)(6) is concerned, it's not applicable to Mr. Shultz's for several reasons that the Court need not discuss here, but the most obvious one is that he has not yet served at least 10 years of the term of imprisonment.[6] *See id.* (as a prerequisite, the defendant must have served at least 10 years of the term of imprisonment).

### (d) *§ 1B1.13(d): Rehabilitation and Individualized Circumstances*

Mr. Shultz submits that he "has had time to think about the importance of his family while he has been down and he now sees the poor choices and realizes that he need to take his life and family much more serious." (Def.'s Rep. Br., DE 167 at 9.) He is now making the right choices by programing and staying trouble-free. *Id.* Mr. Shultz requests an evidentiary hearing, so the Court may assess the changes he has made. Together with his own representations, he submitted letters from his family members who describe him as a man who has learned from his mistakes and transformed his life, and who is willing to repay his debt to society. (DE 167-1 at 2, 5.)

Mr. Schultz is to be commended for his rehabilitative efforts. And the letters from family members should bring comfort to Mr. Shultz that his improvements have been recognized by those who love him the most. But § 1B1.13(d) specifically provides that "[p]ursuant to 28 U.S.C.

---

[6] In his brief, Mr. Shultz contends, without citing any authority, that "[t]he 2025 Amendments to § 1B1.13 now allows court to recognize legal and policy changes as extraordinary and compelling reasons, even when those changes aren't retroactive." (Def.'s Br., DE 162 at 3–4.) Yet this argument is foreclosed in the Seventh Circuit. *See United States v. Johnson*, 778 F. Supp. 3d 997, 1004 (C.D. Ill. 2025) ("Regarding [the defendant's] argument made pursuant to § 1B1.13(b)(6), the Seventh Circuit recently held that the Commission exceeded its authority when promulgating § 1B1.13(b)(6) to the extent that it allows a court to consider a non-retroactive change in the law as an 'extraordinary and compelling reason' to reduce a sentence, either singly or in combination with other factors." (quoting *United States v. Black*, 131 F.4th 542 (7th Cir. 2025)).

§ 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." And although "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted" (*id.*), there are no other circumstances that alone or in combination with each other point to the need for a reduced sentence. In that sense, rehabilitation is all that Mr. Shultz has to support his cause but rehabilitation by itself, even if the Court accepts all of Mr. Shultz's representations, is not enough to establish extraordinary and compelling reasons for reduction of sentence.

(e) *Mr. Shultz's Age*

Mr. Shultz points out that he is 55 years old and that he is unlikely to commit other crimes if released. While age may constitute an extraordinary and compelling reason, a defendant must be at least 65 years old, be experiencing a serious deterioration in physical or mental health because of the aging process, and have served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(b)(2). Given that none of these factors apply to Mr. Shultz, his reliance on his age is unwarranted.

(f) *Mr. Shultz's New Arguments in the Reply Brief*

In his reply brief, Mr. Shultz adds two more grounds that he believes constitute extraordinary and compelling reasons for his release. He contends that there's an unwarranted disparity between his sentence and Ms. Justice's sentence, and he argues that his sentence should be reduced because of his being incarcerated during the COVID-19 pandemic.

To begin with, arguments raised for the first time in a reply brief are waived unless "exceptional circumstances" justify an exception to waiver. *See United States v. Fluker*, 698 F.3d 988, 1004 (7th Cir. 2012). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). Therefore, the Court need not consider Mr. Shultz's new arguments. Even so, they lack merit.

Mr. Shultz has not shown that his sentence suffers from unwarranted disparity when compared with Ms. Justice's sentence.[7] Mr. Shultz pleaded guilty to possessing with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count 1); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3). Because of his career offender status, his total offense level was 31 and his criminal history category was VI, resulting in a Guidelines range of 188 to 235 months of imprisonment. (PSR, DE 142 ¶ 96.) The Court sentenced him to 180 months on Count 1 and 120 months on Count 3, to be served concurrently, for a total of 180 months. (DE 149.)

On the other hand, Ms. Justice pleaded guilty to an Information charging her with conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Her total offense level was 25 and her criminal history category was I, resulting in a Guidelines range of 57 to 71 months of imprisonment. (Case No. 2:21-CR-

---

[7] The Court construes this claim under the "catchall" provision of § 1B1.13(b)(5) which provides that extraordinary and compelling reasons exist when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

21, PSR, DE 11 ¶ 105.) She was sentenced to five years of probation. (Case No. 2:21-CR-21, DE 20.)

Mr. Shultz's argument ignores the fact that he and Ms. Justice were convicted of different drug offenses and Ms. Justice was not convicted of being a felon in possession of a firearm. Mr. Shultz also overlooks that Ms. Justice's criminal history category was I, whereas his was VI. In addition, Mr. Shultz does not address the differing roles he and Ms. Justice played in the commission of the crimes: in relation to the drug offenses, Ms. Justice was the driver because Mr. Shultz's license was suspended, whereas Mr. Shultz would pick up the drugs from a supplier, hide them in the car during the transportation, and sell them later. Without showing that he is similarly situated to Ms. Justice, Mr. Shultz cannot establish an unwarranted disparity in sentencing. *See United States v. White*, No. 24-1844, 2025 WL 3251543, at *3 (7th Cir. Nov. 21, 2025) (holding that where the defendant cannot establish that she is similarly situated to her co-defendants she cannot establish an unwarranted disparity in sentencing). Therefore, his argument that the different sentences entitle him to compassionate release is unavailing.

Likewise, Mr. Shultz has failed to show that his incarceration during the Covid–19 pandemic constitutes extraordinary and compelling reasons for a reduction of his sentence. No doubt the COVID-19 pandemic added its own challenges to an already difficult life in prison, but Mr. Shultz hasn't shown that he was uniquely affected by those adversities. Apart from describing the general hardships due to the prison lockdowns and cancellation of family visits, church services, and leisure activities, he has not presented any medical documents that would shed additional light on his circumstances. Besides, Mr. Shultz overlooks that he was sentenced on March 22, 2022, in the midst of the pandemic, and the Court understood the circumstances

facing prisoners when pronouncing sentence. That is, the Court had already accounted for the COVID-19 pandemic when sentencing Mr. Shultz.

### (4) *Section 3553(a) Factors Weigh against Mr. Shultz's Early Release*

But even if Mr. Shultz could demonstrate extraordinary and compelling reasons for his release, the Court would still deny his motion based on its consideration of the § 3553(a) factors.

Mr. Shultz argues that he is of advanced age, poses no threat if released, has a re-entry plan, and has a supportive family to assist him upon his release. He also included letters from his family members that express much hope for Mr. Shultz. Again, the Court commends Mr. Shultz for participating in prison programming and for his efforts to rehabilitate himself. Yet these positive efforts must be considered together with his criminal conduct and other § 3553(a) factors, which weigh heavily against early release.

During the search of his home, police found 48 guns. Among them, there were 34 long guns, two of which were fully automatic (they were disassembled), and 14 handguns. They also recovered a bullet-proof vest. In addition, the officers seized 226 grams of methamphetamine, along with digital scales and packaging material. They also found $25,993 in cash, although not all of that money was attributable to drug dealing. In a post-arrest interview, Mr. Shultz admitted that the methamphetamine was his and that he sold it for the last 6 months. He also admitted possessing some of the firearms in the house, although he later counseled Ms. Justice to claim that the guns were hers. Mr. Shultz possessed the guns despite his extensive and violent criminal history and while he was heavily addicted to methamphetamine (*see* PSR, DE 142 ¶ 80) and was a drug dealer.

Mr. Shultz's criminal history and the violence that it embodies plays a significant role in the Court's weighing of the § 3553(a) factors. Although that history is somewhat dated, it has a steady pattern of recurring brutality. Mr. Shultz was convicted of burglary in 1991 and of battery in 1993, 1995, 1999, and 2001. (PSR, DE 142 ¶¶ 40–44.) In 2006 and 2008, he was convicted of battery causing bodily injury. (*Id.* ¶¶ 45–46.) The offense for the 2006 conviction is especially egregious as he beat his then-girlfriend for ten minutes and threatened to choke her with his belt, leaving her with a bleeding mouth and nose, two black eyes, and swollen face. (*Id*. ¶ 45.) The pattern of these offenses suggests that Mr. Shultz remains a danger to the community, despite his classification by the BOP as "General Low Level."

The Court is mindful that Mr. Shultz is 55 years old, which may reduce the likelihood of recidivism. The Court is also aware of Mr. Shultz's extremely difficult childhood, the abuses he suffered, and the mental health struggles that followed. And, of course, the Court is cognizant of the struggles that his disabled son experiences, aggravated—no doubt—by the absence of his father.

Having considered these factors in the aggregate, the Court finds that the balance weighs strongly against his early release, which is currently scheduled for November 2031. In short, early release of Mr. Shultz or even a reduction in his sentence, would fail to achieve the sentencing goals under § 3553(a): reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence to criminal conduct; or protecting the public from further crimes of the defendant.

**(C) Conclusion**

Because Mr. Shultz has not established that extraordinary and compelling reasons exist under the factors enumerated in § 1B1.13, alone or in combination with each other, and because his release or a reduction of sentence would undermine the sentencing goals, the Court DENIES Mr. Shultz's motion for compassionate release (DE 161).


SO ORDERED.

ENTERED: May 6, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

16